UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

KENNETH WARD,

            Plaintiff,

     -vs-

LUCIEN LECLAIRE, Jr., et al.,

            Defendants.

─────────────────────────────────

**DECISION AND ORDER**

**No. 07-CV-6145(MAT)**

## I.   Introduction

Kenneth Ward ("Ward" or "Plaintiff"), proceeding pro se, instituted this action against Defendants alleging violations of his constitutional rights that allegedly occurred between October 5, 2005, and February 16, 2006, while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), housed at Gowanda Correction Facility ("GCF").[1] Plaintiff, who has had asthma for more than twenty years, contends that Defendants violated his Eighth Amendment rights by acting with deliberate indifference in exposing him to dangerous levels of environmental tobacco smoke ("ETS"). Plaintiff also alleges that certain Defendants violated his First Amendment rights by retaliating against him for complaining about his exposure to

───────────

[1]   Plaintiff was released from DOCCS' custody on January 28, 2008.

ETS at GCF and about correctional officers' alleged failure to enforce the facility's "no smoking" policy.

On August 14, 2008, the Court (Siragusa, D.J.) granted in part Defendants' motion to dismiss insofar as Plaintiff's claims against Defendants in their official capacities were dismissed; the claims against defendants Gowanda Superintendent Richard Savage, Deputy Superintendent of Programs Jose Melendez and Corrections Officer Marcia Hessel were dismissed; Plaintiff's claims against Defendants Goord, LeClaire, Annucci and Eagen were dismissed; Plaintiff's conspiracy claim[2] was dismissed; and Plaintiff's pendent state law claims were dismissed.

On May 6, 2010, Defendants moved for summary judgment (Dkt #65), arguing that Plaintiff failed to exhaust his administrative remedies; no triable issues of fact exist with regard to the Eighth Amendment and retaliation claims; and Defendants are entitled to qualified immunity. Prior to Plaintiff filing responsive papers, the case was transferred to mediation on July 26, 2011, and counsel for Plaintiff was assigned. A mediation

---

[2]

Plaintiff asserted that "[a]ll the unnumber[ed] grievances in paragraph (23) were never filed, logged or responded to by Defendant Janish in violation of directive (4040) procedures as well as Plaintiff['s] constitutional right to redress complaints. The Defendants conspire[d] with one another to cover-up all the smoking, harassment, and retaliation violations by depriving Plaintiff of his constitutional rights then locking him up in the box to keep him quiet and punish him for speaking out about the smoking probl[e]ms at GCF." Am. Comp. ¶ 24.

conference was conducted on October 21, 2011, but the case did not settle.

On December 31, 2012, Plaintiff, through counsel, filed papers in opposition to Defendants' summary judgment motion (Dkt #98). Plaintiff also filed a motion to file a second amended complaint (Dkt #100). Defendants have opposed the motion to amend.

For the reasons set forth below, the Court grants Defendants' motion for summary judgment on the basis that Plaintiff has failed to exhaust administrative remedies. Plaintiff's motion to amend is denied with prejudice.

## II.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Lucente v. International Business Machines Corp., 310 F.3d 243, 253 (2d Cir. 2002) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); other citation omitted). "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the

non-movant[.]" <u>Id.</u> (citing <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986); other citation omitted).

Once the movant meets its initial burden of demonstrating the absence of a genuine issue of material fact, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to defeat summary judgment. <u>Matsushita Elec. Indus. Co.</u>, 475 U.S. at 586. The non-movant "'must set forth specific facts showing that there is a genuine issue for trial'" in order to avoid dismissal. <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

## III. Exhaustion

### A.   General Legal Principles

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002), <u>rev'g</u> <u>Nussle v. Willette</u>, 224 F.3d 95 (2d Cir. 2000). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." <u>Porter</u>, 534 U.S. at 524 (citing

Booth v. Churner, 532 U.S. 731, 739 (2001)). The Supreme Court has described § 1997(e)(a) as eliminating "judicial discretion to dispense with exhaustion." 534 U.S. at 529; see also Booth, 532 U.S. at 741 n. 6 ("[W]e stress the point that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). "Courts have interpreted the [PLRA's exhaustion] to require complete exhaustion in accordance with institutional procedures." Graham v. Cochran, 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874 at *6 (S.D.N.Y. Sept. 25, 2002) (collecting cases).

## B.   DOCCS' Grievance Review Process

Section 1997e(a) requires a prisoner filing a § 1983 suit to exhaust a claim prior to filing suit. Neal v. Goord, 267 F.3d 116, 121 (2d Cir. 2001); see also, e.g., Jackson v. Dist. of Columbia, 254 F.3d 262, 268–69 (D.C. Cir. 2001) (exhaustion must be complete before suit filed). For inmates in DOCCS' custody, the exhaustion procedure entails the filing of grievances through the Inmate Grievance Program ("IGP"), which consists of three levels of review. First, the inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC"). See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a). Second, after receiving a response from the IGRC, the inmate may appeal to the facility superintendent. Id., § 701.7(b). Third, after receiving a response from the superintendent, an inmate may file an appeal of that decision to

the Central Office Review Committee ("CORC"). Id., § 701.7(c); see also Cruz v. Jordan, 80 F. Supp.2d 109, 117-18 (S.D.N.Y. 1999) (discussing prison administrative review process in detail).

If a prisoner has not followed each of steps detailed above prior to commencing his federal litigation, he has failed to exhaust his administrative remedies. See Sulton v. Greiner, No. 00 Civ. 0727(RWS), 2000 WL 1809284, at *3-4 (S.D.N.Y. Dec. 11, 2000) (noting that DOCCS' grievance procedures include a requirement that an inmate appeal a Superintendent's decision to the CORC by filing an appeal with the Grievance Clerk; granting granting summary judgment based on failure to exhaust administrative remedies because prisoner failed to appeal to the CORC)).

### C.   Plaintiff's Exhaustion Efforts

Plaintiff refers only to three grievances specifically by number in his complaint. They are as follows: GWD 9294-05 on December 1, 2005, contending that both inmates and staff members violated the smoke-free policy, thereby exposing him to dangerously high levels of ETS (Complaint ("Compl."), ¶ 16, 16; GWD 9268-05 on November 12, 2005, filed against Sergeant Hastings for harassment (Compl., ¶ 16); and GWD 9152-05 on October 17, 2005, alleging smoking violations by inmates and staff (Compl., ¶ 13). Plaintiff also indicates that he filed a number of other grievances, which he does not identify by grievance number. They are listed in his

complaint as follows: December 9, 2005, "for officers [sic] threats and physical assault"; December 19, 2005, for "staff misconduct"; December 21, 2005, "for SGT. Boyce retaliation"; December 27, 2005, for "c.o. Waldmiller retaliation"; December 29, 2005, for "c.o.'s [sic] Waldmiller and Riggtione making threats"; January 3, 2006, for "c.o.'s [sic] Waldmiller and Riggtone retaliation"; January 11, 2006, for "IGP Supervisor Janish misconduct"; January 17, 2006, for "Sgt. Boyce retaliation"; and February 14, 2006, for "c.o. smoking in van during medical trip." Compl., ¶ 16. Plaintiff asserts claims that for each grievance that was denied, he submitted an appeal request to the Grievance Supervisor at GCF, who then wrongfully failed to transfer the appeals to the CORC. Plaintiff's Memorandum of Law ("Pl's Mem.") at 5 (citing Affidavit of Kenneth Ward ("Ward Aff."), ¶ 9).

Defendants assert that although Plaintiff "filed grievances about second hand smoke[,]" and although he "claims he appealed the denial of the grievance, there is no record of such an appeal to CORC." Defendants' Memorandum of Law ("Defs' Mem.") at 9 (Dkt #73). In support of their non-exhaustion argument, Defendants have submitted the Declarations of Linda Janish ("Janish Decl.") and Chris Lindquist ("Lindquist Decl."). Janish is the Inmate Grievance Program Supervisor ("IGPS") at GCF, and Lindquist is Assistant Director of DOCCS' IGP. According to Janish and Lindquist, DOCCS has no records of any appeals to the CORC with regard to the

pertinent grievances. Defendants argue that Plaintiff's case should be dismissed based upon his failure to exhaust his remedies completely by appealing the grievances to the CORC.

Only the three grievances identified by number (GWD 9294-05, GWD 9268-05, and GWD 9152-05) relate to incidents and individuals at issue in this proceeding. GWD 9268-05 and GWD 9152-05 were denied, and  GWD 9294-05 was dismissed. Janish Decl., ¶ 3. As noted above, Lindquist indicates that there are no records of appeals to CORC with regard to GWD 9294-05; GWD 9268-05; and GWD 9152-05. See Lindquist Decl., ¶ 5; see also Janish Decl., ¶ 3.

### D.   Analysis

Defendants have adduced sufficient evidence to establish that GCF had a functioning grievance system during the relevant time period that was, in fact, available to Plaintiff. See Hemphill v. State of New York, 380 F.3d 680, 686 (2d Cir. 2004) ("[T]he court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."). The Second Circuit has explained that where remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising

the plaintiff's failure to exhaust as a defense." Id. (citations omitted).

Defendants have searched their records and could find no appeals of the pertinent grievances (GWD 9294-05, GWD 9268-05, and GWD 9152-05).  GWD 9268-05 and GWD 9152-05 were denied, and GWD 9294-05 was dismissed and ceased to be pending based upon Plaintiff's wilful and unexcused failure to attend the hearing.

The Court finds that Defendants have met their "initial burden of establishing the absence of any genuine issue of material fact regarding exhaustion (which initial burden has been appropriately characterized as 'modest')." Murray v. Palmer, No. 9:03-CV-1010 (DNH/GLS), 2008 WL 2522324, at *17 & n. 53 (N.D.N.Y. June 20, 2008) (citing, inter alia, Ciaprazi v. Goord, 02-CV-0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec. 22, 2005) ("[D]efendants' decision to rely instead upon the lack of evidentiary support for plaintiff's retaliation claims, . . . , is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims.") (citing Celotex, 477 U.S. at 323-24)).

Plaintiff has attempted to show that Defendants' actions inhibited him from exhausting his remedies, asserting that the IGPS at GCF purposely failed to transmit his appeal requests. Ward Decl., ¶ 10. Plaintiff states that because his "individual appeal

requests were not being transmitted," he filed three "Notices of Decision to Appeal [his] grievances, listing the dates of filing and issues in regard to each of [his] grievances filed at Gowanda." Id. Plaintiff states that copies of the Notices of Decision to Appeal are attached to his Declaration as Exhibit D (Dkt #98-5).

Exhibit D consists of two documents, which are described, respectively, as Plaintiff's "Second Notice of Decision to Appeal all [his] grievances to (CORC) do [sic] to the fact he Superintendent fail [sic] to respond as required within the twelve (12) working days, time limit" ("the Second Notice of Appeal") and "Third Notice of Decision to Appeal all [his] grievances to (CORC) do [sic] to the fact he Superintendent fail [sic] to respond as required within the twelve (12) working days, time limit" ("the Third Notice of Appeal"). See Dkt. #98-5 at 2, 3. The "Second Notice of Appeal" (undated) lists nine grievances (not identified by grievance number) ranging in date from October 13, 2005, to January 3, 2006. The "Second Notice of Appeal" (also undated) lists thirteen grievances (not identified by grievance number) spanning the time period from October 13, 2005, to January 17, 2006. The Court has checked the filing dates of the grievances listed in the Notices, and the three grievances at issue (GWD 9294-05; GWD 9268-05; and GWD 9152-05) are contained therein. However, the undated and unsigned Notices of Appeal do not constitute evidence that Ward actually appealed the Superintendent's denial of his grievances to

the CORC. Moreover, the Notices of Appeal were not procedurally correct or timely under the applicable regulations. See N.Y. Comp. Code. R. & Regs, tit. 7, § 701.5(d)(1)(i) ("If the grievant or any direct party wishes to appeal to the CORC, he or she must complete and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance. The superintendent's response form contains simple directions for appeal to the CORC.") (emphasis supplied). Plaintiff did not seek permission to extend the time to appeal, which has long since passed. See id. ("An exception to this appeal time limit may be approved by the IGP supervisor under section 701.6(g) of this Part.").

Plaintiff's conclusory assertions that Defendants failed to transmit his appeals to the CORC and the undated, unsigned Notices of Appeal do not constitute specific facts showing that there is a genuine issue for trial regarding exhaustion. In the absence of any competent evidence proffered in opposition, the Court concludes Plaintiff failed to employ the grievance procedure available to him by properly and timely appealing to the CORC. The Court also concludes that no special circumstances exist to excuse Plaintiff's failure to properly exhaust his remedies. See Hemphill, supra ("[I]f the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, 'the Court should consider whether "special circumstances"

have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements.'") (citations and internal quotations omitted). In sum, the Court finds as a matter of law, based upon the current record, that Plaintiff has failed to exhaust his administrative remedies.

### III. Motion to File a Second Amended Complaint

In support of his motion to file a second amended complaint, Plaintiff states that he "mistakenly dropped Superintendent Savage as a defendant in his Amended Complaint, not realizing that there existed a valid cause of action for retaliation against Superintendent Savage." As noted above, however, Superintendent Savage was dismissed as a defendant by the Court (Siragusa, J.) in 2008. Plaintiff avers that with the assistance of legal counsel, he now "has reason to believe that Superintendent Savage retaliated against Plaintiff for filing grievances" while at GCF by ordering Supervising Physician John Piazza, M.D. to remove certain medical restrictions in retaliation for Plaintiff filing grievances regarding his exposure to ETS. In addition, Plaintiff states that he inadvertently neglected to name Dr. Piazza as a defendant on the basis the Dr. Piazza also retaliated against him for filing grievances while at GCF.

In opposition to Plaintiff's motion to amend, Defendants correctly note that Plaintiff failed to comply with Local Rule of Civil Procedure for the Western District of New York ("L.R.") 15(a)

which states, in part, that a movant must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion, and that "the proposed amended pleading must be a complete pleading superseding the original pleading in all respects." Defendants note that Plaintiff also failed to comply with L.R. 15(b) which requires counsel to mark the changes in the proposed amended complaint.

Furthermore, Defendants argue, the specific retaliation claims raised in the proposed second amended complaint against Superintendent Savage and Dr. Piazza were not the subject of any grievance. Plaintiff's Second and Third Notices of Appeal (Dkt #98-5 at 2, 3) do not list any grievances against Superintendent Savage and Dr. Piazza. However, there is one grievance, GWD-9389-06, filed on February 14, 2006, pertaining to "Medical Restriction Lifted", which is listed in the document titled "C.O.R.C. Appeals from Gowanda" filed by Ward. This grievance, which ultimately was denied by the CORC on March 15, 2006, could relate to the alleged retaliation by Superintendent Savage and Dr. Piazza, based upon the allegations in the proposed second amended complaint. See Dkt #101, ¶¶ 53-72.

In general, leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). The grant or denial of an opportunity to amend is within the sound discretion of the District Court, Foman v. Davis, 371 U.S. 178, 182 (1962), and is to be decided on the "particular facts and circumstances" of

each case. <u>Parness v. Lieblich</u>, 90 F.R.D. 178, 182 (S.D.N.Y. 1981). The Supreme Court has cited the following as reasons for denying a motion to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.," <u>Foman</u>, 371 U.S. at 182. The Second Circuit has identified "[c]onsiderations of undue delay, bad faith, and prejudice to the opposing party" as the "touchstones of a district court'' discretionary authority to deny leave to amend." <u>Barrows v. Forest Laboratories, Inc.</u>, 742 F.2d 54, 58 (2d Cir. 1984).

Even if the claims against Dr. Piazza and Superintendent Savage were exhausted, the Court finds that amendment is unwarranted. First, Plaintiff's delay in moving to amend to add claims against Superintendent Savage and Dr. Piazza is inexcusable. Counsel appeared in this action in July 2011, and engaged in a mediation conference. There is no explanation given as to why counsel required over a year to discover the premises of the claims against Superintendent Savage and Dr. Piazza. In addition, as Defendants point out, discovery would have to be extended and Plaintiff would have to be deposed again regarding the new allegations. "Unexcused delay, coupled with the probability that the addition of new claims would lead to a new wave of discovery, is also an adequate basis for denying leave to amend." <u>Richardson</u>

Greenshields Securities, Inc. V. Mui-Hin Lau, 113 F.R.D. 608, 612 (S.D.N.Y. 1986) (citing Church of Scientology v. Siegelman, 94 F.R.D. 735, 740 (S.D.N.Y. 1982)). Accordingly, this case presents a situation where it is appropriate for the Court in its discretion to deny Plaintiff's motion for leave to file a second amended complaint.

## IV. Conclusion

For the foregoing reasons, Defendants' motion summary judgment dismissing all claims against them is granted on the basis that Plaintiff has failed to comply with the PLRA's exhaustion requirement. Plaintiff's amended complaint is dismissed. Because it is unnecessary to do so, the Court does not address Defendants' alternative arguments that the claims in the amended complaint fail as a matter of law and that they are entitled qualified immunity.

Plaintiff's motion to file a second amended complaint is denied.

The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 16, 2013
           Rochester, New York

-15-